**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000680**
**30-NOV-2017**
**10:57 AM**

NO. CAAP-16-0000680

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

CP, Petitioner-Appellant,
v.
JO, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-P NO. 12-1-6481)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

Plaintiff-Appellant C.P. (**Mother**) appeals from the "Order Re: Trial Issues" filed on September 15, 2016, and the related "Findings of Fact and Conclusions of Law" (**FOF/COL**) filed on January 10, 2017, both entered by the Family Court of the First Circuit (**family court**).[1]

On appeal, Mother seeks a new trial alleging that the family court erred by: (1) failing to impose sanctions and strike a report by the court-appointed Custody Fact Finder (**CFF**), thereby denying Mother due process; (2) permitting a Child Custody Recommending Counselor (**CCRC**) from California to be qualified as an expert witness to present evidence regarding custody of minor child, in violation of Hawai'i Rules of Evidence (**HRE**) Rule 403; (3) admitting a report by the CCRC premised on the belief that the case was a relocation case from California to

---

[1] The Honorable Sherri L. Iha presided, except as otherwise noted.

Hawai'i, in violation of HRE Rules 402 and 403; and (4) holding, without evidentiary support, that it was in the best interest of minor child for Mother and Defendant-Appellee J.O. (**Father**) to have joint legal and physical custody only if they resided within 75 miles of one another.

For the reasons discussed below, we affirm.

## I. Due Process

Mother contends the family court denied her due process of law by not imposing sanctions against Father and striking the CFF Report pursuant to Hawai'i Family Court Rules (**HFCR**) Rule 37(b)(2). Due to Father's failure to properly respond to Mother's discovery requests, the family court issued an order on November 18, 2015, compelling Father to, *inter alia*, produce documents by December 7, 2015. The order also extended the deadline for the CFF Report. Subsequently, as to Mother's request for documents Father planned to use as evidence in the custody proceeding, Father responded by stating "to be determined." Mother argues that she did not receive custody-related documents from Father as ordered by the family court, but that Father sent documents within the scope of the discovery order to the CFF. Mother thus argues that "not having the documents submitted to the CFF denied [Mother] the opportunity to submit materials in rebuttal or to clarify matters that were in the documents submitted to the CFF by [Father]."

Our review of the record indicates that, although Mother made reference to her due process rights in her "Motion to Impose HFCR 37(b)(2) Sanctions" (**Motion for Sanctions**) filed on April 8, 2016, her motion was primarily couched in terms of sanctions under HFCR Rule 37(b)(2). On appeal, she does not argue the family court abused its discretion under HRCR Rule 37(b)(2), and thus we limit our review to her due process argument. In this regard, we answer "questions of constitutional law by exercising our own independent judgment based on the facts of the case. Thus, [the appellate court reviews] questions of constitutional law under the 'right/wrong' standard." Cty. of

2

Kaua'i v. Baptiste, 115 Hawai'i 15, 25, 165 P.3d 916, 926 (2007) (internal quotation marks and citation omitted).

As set forth in Mother's Motion for Sanctions, Father submitted six documents[2] (**the six documents**) to the CFF, which Mother argues fell within the scope of her document request and were not produced to her. On January 5, 2016, the CFF sent an email to both parties' counsel, attaching a list of all the documents she had received from them related to her forthcoming report. Mother's counsel was in the hospital on January 5, 2006, but returned to the office the following week.

The CFF's final report, filed with the family court on February 29, 2016, included a complete list of "Contacts Made and Information Reviewed." The report listed all of the six documents.

Mother objected to the CFF Report in her Motion for Sanctions. At the April 14, 2016 hearing on Mother's Motion for Sanctions, the family court[3] asked Mother's counsel if he had contacted the CFF regarding the documents after the CFF's January 5 email and let the CFF know that Mother had not received some of the documents. Mother's counsel stated that he could have contacted the CFF but did not, explaining that he did not think to do that because the existing order required Father to provide the documents to Mother.

Prior to the CFF Report being filed, Mother's counsel had notice of the documents submitted to the CFF and could have immediately raised with the CFF the issue of having not received certain documents. See In re Guardianship of Carlsmith, 113 Hawai'i 236, 239, 151 P.3d 717, 720 (2007) ("At its core, procedural due process of law requires *notice and an opportunity to be heard at a meaningful time and in a meaningful manner*

---

[2]    The six documents include: (1) Father's custody binder, (2) California Pleadings and Orders in Case No. SF 12-1866 (**UPA action**), (3) Curriculum Vitae for Linda Tell, RN, MFT (the CCRC), (4) the CCRC Report, (5) Father's certificate of class completion (**certificate of class completion**), and (6) various text messages between parents.

[3]    The Honorable Brian A. Costa presided at this hearing.

before governmental deprivation of a significant liberty interest."). Mother had the opportunity to be heard at a meaningful time and in a meaningful manner by the CFF between January 12, 2016 (accounting for Mother's counsel's time to return to work from the hospital) and February 29, 2016 (when the CFF Report was filed).

After the CFF Report was filed, Mother had further opportunity to be heard at the April 14, 2016 hearing on her Motion for Sanctions. There, Mother's counsel sought sanctions against Father, including that the CFF Report be struck. The family court considered the matter carefully, ordered that Father would be precluded from using a "Certificate of Class Completion" for a parenting class, but denied other sanctions. As noted by the family court, because the parties had not established what was in Father's "custody binder" provided to the CFF, the court was not able to make a determination regarding those documents and sanctions were denied without prejudice. As to pleadings and orders from proceedings in California, as well as text messages, both parties had access to these documents and the family court denied sanctions.

Mother also had an opportunity to be heard at trial, where her counsel cross-examined and re-cross-examined the CFF regarding her report and the documents upon which the CFF relied.

An opportunity to be heard is the bedrock of due process. Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citing Armstrong v. Manzo, 380 U.S. 545, 552 (1965) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.")) (internal quotation marks omitted); In re Guardianship of Carlsmith, 113 Hawaiʻi at 239, 151 P.3d at 720. Although we do not condone Father's failure to fully comply with the family court's order compelling discovery, we conclude that the proceedings in the family court allowed Mother meaningful and timely opportunities to address the CFF Report and the documents that the CFF relied upon.

4

Thus, the family court did not violate Mother's due process rights by not striking the CFF Report.

## II. The CCRC's Expert Testimony and the CCRC Report

Mother argues that permitting the CCRC to be qualified as an expert witness and present testimony was a violation of HRE Rule 403, and that admitting her report violated HRE Rules 402 and 403. Mother's arguments are grounded in the contention that because the CCRC's personal knowledge and report were based on information gathered three years prior in 2012, they were not relevant to the instant action in 2015 and were prejudicial.

"A trial court's determination that evidence is 'relevant' within the meaning of [Hawai'i Rules of Evidence] Rule 401 (1993) is reviewed under the right/wrong standard of review." State v. St. Clair, 101 Hawai'i 280, 286, 67 P.3d 779, 785 (2003). Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." HRE Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

HRE Rule 403 further provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Whether relevant evidence should be excluded under HRE Rule 403 is within the trial court's exercise of discretion because it requires a "cost-benefit calculus" and a "delicate balance between probative value and prejudicial effect." Kaeo v. Davis, 68 Haw. 447, 454, 719 P.2d 387, 392 (1986) (internal quotation marks and citations omitted).

5

Hawaiʻi Revised Statutes (**HRS**) § 571-46 (Supp. 2016), titled "Criteria and procedure in awarding custody and visitation; best interest of the child" provides, in relevant part:

> (a) In actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper. In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:
>
>> (1) Custody should be awarded to either parent or to both parents according to the best interests of the child, and the court also may consider frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child;
>>
>> . . .
>>
>> (5) The court may hear the testimony of any person or expert, produced by any party or upon the court's own motion, whose skill, insight, knowledge, or experience is such that the person's or expert's testimony is relevant to a just and reasonable determination of what is for the best physical, mental, moral, and spiritual well-being of the child whose custody is at issue[.]

HRS § 571-46(b) states that the family court "shall consider" a non-exclusive list of sixteen factors in determining the best interests of the child. These non-exclusive factors are:

> (1) Any history of sexual or physical abuse of a child by a parent;
>
> (2) Any history of neglect or emotional abuse of a child by a parent;
>
> (3) The overall quality of the parent-child relationship;
>
> (4) The history of caregiving or parenting by each parent prior and subsequent to a marital or other type of separation;
>
> (5) Each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;
>
> (6) The physical health needs of the child;

6

(7) The emotional needs of the child;

(8) The safety needs of the child;

(9) The educational needs of the child;

(10) The child's need for relationships with siblings;

(11) Each parent's actions demonstrating that they allow the child to maintain family connections through family events and activities; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

(12) Each parent's actions demonstrating that they separate the child's needs from the parent's needs;

(13) Any evidence of past or current drug or alcohol abuse by a parent;

(14) The mental health of each parent;

(15) The areas and levels of conflict present within the family; and

(16) A parent's prior wilful misuse of the protection from abuse process under chapter 586 to gain a tactical advantage in any proceeding involving the custody determination of a minor. Such wilful misuse may be considered only if it is established by clear and convincing evidence, and if it is further found by clear and convincing evidence that in the particular family circumstance the wilful misuse tends to show that, in the future, the parent who engaged in the wilful misuse will not be able to cooperate successfully with the other parent in their shared responsibilities for the child. The court shall articulate findings of fact whenever relying upon this factor as part of its determination of the best interests of the child. For the purposes of this section, when taken alone, the voluntary dismissal of a petition for protection from abuse shall not be treated as prima facie evidence that a wilful misuse of the protection from abuse process has occurred.

Therefore, relevant evidence in a child custody hearing is evidence that has a tendency to make the existence of facts regarding the best interests of the child more or less probable. The court may admit relevant evidence regarding the best interests of the child, including testimony from an expert witness, as long as its probative value is not substantially outweighed by the factors listed in HRE Rule 403.

## A. The CCRC's expert testimony

Neither party disputes that the CCRC is qualified to testify on the issue of child custody determinations pursuant to

7

her training and experience.  Mother instead argues that the family court abused its discretion by qualifying the CCRC as an expert witness because (1) the CCRC's knowledge from three years ago was no longer relevant, (2) the CCRC's testimony would waste time and confuse the facts, (3) the CFF's more recent report rendered the CCRC's report cumulative and stale, and (4) that the CCRC's testimony worked a substantial detriment to Mother.

The CCRC's personal knowledge is relevant to several HRS § 571-46(b) factors: the overall quality of the parent-child relationship; each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule; each parent's actions demonstrating that they allow the child to maintain family connections through family events and activities; each parent's actions demonstrating that they separate the child's needs from the parent's needs; any evidence of past or current drug or alcohol abuse by a parent; and the areas and levels of conflict present within the family.  HRS § 571-46(b)(3), (5), (11), (12), (13) and (15).  These factors are not limited to a present snapshot, but rather assess a history of family relationships and individual family member characteristics and actions.  Therefore, with regards to best interest of the child factors, the CCRC's testimony was relevant and was not rendered stale by the newer CFF report.

Further, the family court did not abuse its discretion in its HRE Rule 403 balancing.  Again, several HRS § 571-46(b) factors consider the family's history and include words like "overall," "history," and "any."  HRS § 571-46(b)(1), (2), (3), (4), and (13).  The CCRC can testify about the parties' family history circa 2012 more effectively than the CFF, and that historical information is relevant to the best interest of the child analysis.  The probative value of the CCRC's testimony is not outweighed by the danger of being cumulative or causing confusion.

8

### B. The CCRC Report

Mother also argues that the family court abused its discretion by admitting the CCRC Report because it (1) was prepared three years ago and is thus no longer relevant to the best interest of minor child in 2015, and (2) is rendered cumulative based on the more up-to-date CFF Report. We disagree with these arguments for the reasons stated above. The CCRC Report is relevant and the family court did not abuse its discretion under HRE Rule 403.

### III. Sufficiency of the Evidence as to Custody Ruling

Mother argues that the evidence does not support the family court's determination that it is in minor child's best interest that the parties have joint physical custody only if they resided within 75 miles of one another. Alternatively, the family court ruled that if the parties did not reside within 75 miles of each other by December 28, 2016, it was in the child's best interest that Father be awarded sole physical custody. In contesting these custody rulings, Mother challenges the family court's FOFs 16, 19, 31, 41, 43, 51, 52, 55, 57, and 58.[4]

---

[4] The FOFs challenged by Mother state:

16. On October 24, 2012, Petitioner returned to California with child to live with Respondent in their home and Petitioner returned to work that weekend.

. . . .

19. On Halloween (October 31, 2012), Respondent's family came to visit with the child and Petitioner refused to allow them to see him. Police were called because Petitioner claimed they were trying to pull the child away from her. Petitioner left the residence and went to a motel with the child.

. . . .

31. Ms. Tell recommended that the parents continue to share custody if they remain in California, but if Petitioner were to leave California then Respondent was to have physical custody of the child. At the trial before this Court, Ms. Tell testified regarding her observations and personal knowledge of the case while it was in California. Ms. Tell was a credible witness at trial.

(continued...)

9

We review Mother's arguments by applying the following standards:

> The family court's FOFs are reviewed on appeal under the clearly erroneous standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. Substantial evidence . . . is credible evidence which is of sufficient quality and probative value to enable a person of

---

4(...continued)

. . . .

41.    After Petitioner left California with the child, Respondent requested to have regular Facetime calls daily with the child. Despite that, Petitioner did not make good faith attempts to have the Facetime calls with Respondent. Excuses included the child is napping/sleeping; the child is not at home; the child needs to take a bath; the child is visiting with family. There were many calls that were disconnected abruptly. The calls were never consistent; regular; or at the same time at night.

. . . .

43.    Despite the court order, Petitioner failed to make the child available for Facetime at the time designated everyday. Petitioner requested that the time be changed, but still Respondent would have difficulty getting the calls on time. The Fact Finder suggested using a bigger screen to see the child, but Petitioner did nothing about that. The Fact Finder observed several different computers in Petitioner's home when she visited, but none were being used for the Facetime visits.

. . . .

51.    Petitioner's actions prevented Respondent from having meaningful, regular, and consistent contact with the child after she brought the child to Hawaii on January 8, 2015.

52.    Petitioner's actions focus on her needs rather than the needs of the child.

. . . .

55.    Petitioner has never been self-supporting.

. . . .

57.    Both the Custody Evaluator and the Fact Finder were concerned about Petitioner's stability.

58.    Petitioner's allegations regarding substance abuse and domestic violence by Respondent were unfounded. Both Petitioner and Respondent drank excessively prior to the birth of the child. Since the birth of the child, the Court has no concerns regarding either parties use of alcohol.

10

> reasonable caution to support a conclusion.
>          On the other hand, the family court's COLs are
> reviewed on appeal *de novo*, under the right/wrong standard.
> COLs, consequently, are not binding upon an appellate court
> and are freely reviewable for their correctness.

In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001)
(citations, quotation marks and brackets omitted). "[T]estimony
of a single witness, if found by the trier of fact to have been
credible, will suffice" to establish substantial evidence. Id.
at 196, 20 P.3d at 629. Assessing the credibility of witnesses
and weighing the evidence is the province of the trier of fact,
not the appellate court. Fisher v. Fisher, 111 Hawai'i 41, 46,
137 P.3d 355, 360 (2006).

Based on the testimony of the witnesses and the
documents admitted into evidence, we conclude that the family
court did not clearly err with regard to FOFs 19, 31, 41, 43, 51,
52, 57, and 58.

With regard to FOFs 16 and 55, we conclude that parts
of these findings are clearly in error. With regard to FOF 16,
there is not substantial evidence to support the family court's
finding that Mother returned to work upon her return to
California. Mother took maternity leave from her California job
and was scheduled to return to work shortly after she flew back
to California. However, Mother testified that when she "arrived
in California," she notified her employer that she did not intend
to return, and Father testified that Mother was "calling out of
work." It does not appear that there is any other evidence
regarding Mother's return to work after maternity leave.

With regard to FOF 55, the family court's finding that
Mother has "never" been self-supporting lacks substantial
evidentiary support. Before she met Father, Mother was employed
and paying rent in a shared apartment with a friend. Although
the CFF testified at trial that Mother has "always" relied on
somebody else in her life and in her households, the CFF Report
does not state that Mother relied on outside financial support

11

while living in Las Vegas or Sacramento prior to meeting Father, and rather that Mother "often" relied on others for support.

Although part of FOFs 16 and 55 are clearly erroneous, these errors do not change the outcome of the case. That is, given the other findings by the family court and the totality of the evidence in the case, there is sufficient evidence to support the family court's ultimate determination as to the best interests of the child. As has been long recognized in family court matters,

> [g]enerally, the family court possesses wide discretion in making its decisions and those decision will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360 (citation omitted).

Further, with regard to FOF 55, we disagree with Mother's argument that the family court erred in using a "financial test" in determining custody. Although financial well-being is not in itself a deciding factor, some of the considerations for determining the best interest of a child may be impacted by financial resources. These include each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule; the physical health needs of the child; and the safety needs of a child. HRS § 571-46(b)(5), (6), (8). Thus, the family court did not err in considering Mother's financial resources in determining the best interests of minor child.

As to Mother's overall contention that the family court's ruling as to custody is not supported by the evidence, we must disagree. HRS § 571-46 provides the family court with the criteria and procedures for awarding child custody and visitation, and a list of sixteen non-exclusive factors in determining the best interest of the child. The best interest of

the child standard is "paramount when considering the issue of custody" and "the family court is granted broad discretion to weigh the various factors involved, with no single factor being given presumptive paramount weight[.]" Fisher, 111 Hawaiʻi at 50, 137 P.3d at 364.

Mother contends that the family court's FOFs do not address (1) the overall physical and emotional effect of relocation on minor child, (2) the effect of the relocation on minor child's relationship with his Mother, (3) what arrangements will be made for minor child's continued contact with his extended Hawaiʻi family, (4) how Mother will afford visiting minor child in California, and (5) minor child's physical health, educational, educational, and safety needs.

The family court in the instant case made its custody determination after an eight-day trial on the custody issues, at which both Mother and Father were permitted to present evidence. In our view, the family court made sufficient findings based on the evidence to properly exercise its discretion as to the best interest of the minor child.

The family court's FOFs point to several of Mother's attributes relevant to the best interest of the child analysis, including: several areas of conflict within the family such as the birth certificate argument and Mother's actions preventing Father from having meaningful contact with minor child; Mother demonstrating her unwillingness to allow minor child to maintain California family connections through family events and activities such as Halloween and trips to California; Mother's inconsistent cooperation in implementing the CCRC's parenting plan and co-parenting; Mother's inability to put minor child's needs ahead of her own; and Mother's lack of stability compared with Father, weighing on the safety and physical health needs of minor child. See HRS § 571-46(b)(5), (6), (8), (11), (12), (15); FOFs 4, 13, 19, 22, 30, 35, 38, 41, 43-45, 48, 51-52, 57.

13

The family court's FOFs also addressed several of Father's relevant attributes, including: co-parenting efforts; allowing minor child to maintain Hawai'i family connections; offering a stable home supported by his job; and offering the support of his nearby family. See HRS § 571-46(b)(5), (6), (8), (11); FOFs 29, 50, 53-54.

FOF 28 addresses minor child, finding that he is bonded with both parents. HRS § 571-46(b)(3). FOF 49 addresses both parents together, finding that Mother and Father successfully co-parented in the past with the assistance of the CCRC. HRS § 571-46(b)(5).

HRS § 571-46(a)(1) provides that custody should be awarded to "either parent or both parents according to the best interests of the child, and the court may also consider frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child[.]"

Given the distance and relevant constraints, the family court did not award joint physical custody while Mother and Father lived in Hawai'i and California, respectively. However, the family court reasonably found that it was in the best interest of minor child to maintain meaningful contact with both parents. This determination is supported by substantial evidence and the family court's FOFs, in particular FOF 28 which finds minor child has bonded with both parents.

In order to maintain meaningful contact with both parents, the family court established alternative physical custody arrangements: joint custody in California, or sole custody for Father in California with visitation in Hawai'i for Mother. The family court is not required to expressly address in its findings every factor in HRS § 571-46(b). See HRS § 571-46(b). Here, the family court's physical custody alternatives, with preference toward sole custody for Father if the parties do not reside within 75 miles of each other, are supported by the

14

family court's findings regarding the best interest of minor child.   Ultimately, the family court had substantial evidence upon which to base its custody decision and did not abuse its discretion.   Fisher, 111 Hawai'i at 46, 137 P.3d at 360.

### IV.   Conclusion

Based on the foregoing, the "Order Re: Trial Issues" filed on September 15, 2016, by the Family Court of the First Circuit, is affirmed.

DATED:   Honolulu, Hawai'i, November 30, 2017.


On the briefs:

Francis T. O'Brien,
for Petitioner-Appellant.

Rebecca A. Copeland,
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

15